IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BRETT B.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:17-cv-04107-JEH |

## Order and Opinion

Now before the Court is the Plaintiff Brett B.'s Motion for Summary Judgment (Doc. 13), the Commissioner's Motion for Summary Affirmance (Doc. 16), and the Plaintiff's Reply (Doc. 18).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Brett B. filed his application for disability insurance benefits (DIB) on March 29, 2013. He alleged disability beginning on October 1, 2009. His claim was denied initially on August 26, 2013 and was denied upon reconsideration on February 19, 2014. Brett filed a request for hearing concerning his application for DIB on March 3, 2014. A hearing was held before the Honorable David W. Thompson (ALJ) on April 16, 2015. At the hearing, Brett was represented by counsel and a Vocational

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 11, 12).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 8) on the docket.

1

Expert (VE) testified. Following the hearing, Brett's claims were denied on June 23, 2015. His request for review by the Appeals Council (AC) was granted and the AC declined to adopt the ALJ's evaluation at Step Four of the sequential evaluation process that Brett could return to past relevant work. The AC proceeded to find at Step Five that Brett could perform a significant number of jobs in the national economy and he was therefore not disabled from October 1, 2009 through December 31, 2014, his date last insured.

II

Brett was 43 years old on the alleged disability onset date, and at the time he applied for DIB he was living in Victoria, Illinois. At the hearing, Brett testified that he lived with his wife in a two-story home. On his Form SSA-3368, Brett listed the physical and mental conditions that limited his ability to work as follows: chronic obstructive pulmonary disease (COPD); sciatica; foot growth; depression; anxiety with panic attacks; bone spurs; chronic back pain; and migraines. AR 273.

At the hearing, Brett testified that his house was a two-story home but that he had been sleeping on the couch on the house's first floor for the past three years as the steps to the second floor were "just too difficult for [him] to navigate." AR 56-57. He testified regarding his previous receipt of worker's compensation in 2009 due to a hernia injury, in 2006 due to a back injury, and in 2004 or 2005 due to a right leg injury. The last time he collected unemployment benefits was in 2010. He attempted to go back to work in 2012. Brett testified that the 2012 job came to an end because it was physically too demanding. At that job, he was required to lift "[m]aybe 20 pounds at the most." AR 63.

Brett also testified about his medications and stated that he had been on narcotic pain medication on a daily basis since 2005 or 2006. He stated that his doctor was slowly weaning him off of Vicodin though he suggested, per his doctor, he might have to take narcotic pain medication the rest of his life. Brett

testified that his medications helped "a little bit" and made him tired "sometimes." AR 65. Brett next testified he first treated with his family physician, Dr. Valarie Flacco-Nasselroad, M.D. (Dr. Flacco) since 2003 or 2004, last treated with her in January of 2015 (three months before the hearing), and saw her at least once every three months. The ALJ then questioned Brett about the December 17, 2014 Social Security General RFC Questionnaire (Questionnaire) Dr. Flacco completed. Brett explained Dr. Flacco did not perform any physical functional or psychological tests on him prior to completing the Questionnaire though others did perform physical functional testing. Brett was present when Dr. Flacco completed the Questionnaire. She asked him questions that were on the form and then wrote his answers down.

Brett estimated the last time he had an X-ray or MRI of his lower back was in 2012, but his attorney clarified that the last MRI of the lumbar spine done that was in the record was dated March 8, 2014. Brett guessed that the first X-ray or MRI of his lower back was done in 2002. Brett's attorney explained to the ALJ that the March 2014 MRI noted that it was compared to an MRI done in August 2009 and the findings in 2014 were "quite similar" to those seen on the previous 2009 exam. AR 70. The attorney also stated the 2009 MRI was not included. Brett testified that the diagnosis based upon the 2014 MRI was degenerative disc disease and he had "lots of problems associated with that[.]" AR 70. He explained he received physical therapy and electrical impulses for his low back but surgery was not recommended for it.

The ALJ next questioned Brett about his feet issues, COPD, migraines, bone spurs, depression, and anxiety. As to those issues, the ALJ asked Brett whether he took medication for them, when he last saw a doctor to treat the given issue, when he was diagnosed and who diagnosed him with the given issue, and whether he went to the emergency room because of those issues. The ALJ also asked Brett

how many miles he drove in a typical week ("[m]aybe 50, at the most"), whether he was able to take care of his personal hygiene needs ("[y]es"), and if he ever smoked (he quit eight years before the hearing).  AR 76-77.

Upon questioning by his attorney, Brett testified that he experienced numbness in his left arm for a "couple years" and experienced limitations with its use.  AR 77-78.  He stated he could not lift as much with his left arm and with his right, and two of his left hand fingers and thumb were numb "generally most of the time[.]"  AR 78.  The questioning continued:

> Q. And how much can you lift with let's say both of your hands?
>
> * * *
>
> Q. At once?
> A. – pain wise, going, lifting –
> Q. Comfort level, how much can you lift comfortably?
> A. Ten pounds.
> Q. And with your left hand, how much can you lift approximately?
> A. Compared to my right hand?
> Q. Sure.
> A. Maybe seven at a comfort level.

AR 78.  Brett's attorney then asked him to elaborate upon his feet issues.  His attorney also noted that Brett asked the ALJ whether he could stand up a couple of times during the hearing and asked Brett why he was unable to sit.  Brett responded he was unable to sit because of pain in his groin and back.  He also testified about testicle pain he experienced and explained it as "leftover pain from right inguinal surgery, hernia surgery."  AR 80.  He rated the pain in his back, with medication, as a six or seven out of ten and, at times, the medication did not work at all.  He previously tried a back brace which made the incision areas from earlier surgery inflamed such that the brace hurt him "terribly."  AR 81.

The ALJ then asked Brett follow up questions regarding the numbness in his left arm.  Brett testified that the diagnosis for his left arm had "not been

4

explored fully" and he believed his back was the cause of his arm issues. AR 82. He said the pain emanated from behind his shoulder blade. Brett's attorney interjected that there was a MRI of Brett's cervical spine which mentioned a disc bulge and possible C7 root radiculopathy, a November 2012 X-ray of Brett's cervical spine, and a X-ray of Brett's left shoulder in the record as well. Brett additionally testified that his left arm numbness and tingling were treated with medications "but nothing worked." AR 84. The ALJ proceeded:

> Q. Okay. Now there's nothing wrong with your right arm, correct?
> A. That's correct, Your Honor.
> Q. Now what's the maximum amount of weight you can lift with your right arm?
> A. Well, I tried to lift a couple gallons of gas in October, and turned the wrong way and ended up in the emergency room, Your Honor, so I don't know if I could give myself a fair – or you a fair estimate.
> Q. Well, you could tell us how much you could lift with your left arm, and that's the one that you have problems with? So I'm curious why you can't tell me how much you can lift with your right arm, the one you don't have any problems with?
> A. I just – okay, maybe 10, 15 pounds, Your Honor –
> Q. Okay. And what is it that limits your ability to lift with your right arm?
> A. Pain, Your Honor, back pain, testicular pain and pain in my feet, not to mention neck pain.

AR 84-85.

The VE was then questioned.

### III

In his Decision, the ALJ determined that Brett had the severe impairments of degenerative disc disease of the lumbar and cervical spine, arthrosis, neuropathy, and chronic pulmonary insufficiency. AR 34. The ALJ made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR

> 404.1567(b) except is limited to occasional climbing of ropes and scaffolds and occasional stooping; and he needs to avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases and unprotected heights.

AR 40. In his Decision, the ALJ discussed medical evidence of record, including that pertaining to Brett's January 2010 hernia repair surgery, an April 2012 emergency room visit for complaints of fatigue, a November 2012 emergency room visit for complaints of left shoulder and neck pain, and an October 2014 emergency room visit for complaints of pain in his low back and groin after straining while lifting. The ALJ also considered various imaging results, including an X-ray of Brett's cervical spine in November 2012, an X-ray of his feet in June 2012, an MRI of his cervical spine in February 2013, and an MRI of the lumbar spine in March 2014 due to Brett's complaints of low back pain. The ALJ explained the November 2012 X-ray of Brett's cervical spine "revealed some mild narrowing of the $C_4$-$C_5$ foramina, but no acute changes." AR 43. The shoulder X-ray done that same day "revealed mild osteoarthritis at the AC joint with small hypertrophic spurs," and the 2012 feet X-ray "revealed only mild degenerative changes involving the first metatarsophalangeal articulations and mild spurring of the dorsal midfeet." *Id.* The 2013 cervical spine MRI revealed degenerative changes and minimal disc bulge at $C_3$-$C_4$ with mild to moderate foraminal narrowing at several levels, *but no significant compromise* of the spinal canal. *Id.* (emphasis in original). With regard to the March 2014 MRI of Brett's lumbar spine, the ALJ stated:

> An MRI of the lumbar spine was performed in March 2014 due to [Brett's] complaints of low back pain. The MRI revealed multilevel degenerative disc disease with predominately facet hypertrophy, most significant at $L_2$-$L_3$, $L_3$-$L_4$, and $L_5$-$S_1$. Findings were mostly consistent with that seen on previous MRI in 2009 with only mild progression at level $L_5$-$S_1$. There was no indication of nerve root

6

compression or central spinal stenosis. There was only mild disc bulging and mild loss of disc height noted[.]

AR 37.

The ALJ further noted Brett attended physical therapy at times for his complaints of cervical spine pain and shoulder pain. He also addressed Brett's treating physician Dr. Flacco's treatment notes. Her December 2013 notes included Brett's reported daily headaches or migraines and chronic back pain, and her examination that day "revealed no abnormalities except for neck pain with palpation." AR 36. The ALJ addressed Brett's consultative physical examination with Dr. William Lopez in June 2013 at which time Brett reported constant throbbing back pain with occasional radiation to his right leg and knee. The examination was within normal limits except for some soreness with full range of motion of the lumbar spine. AR 36. The ALJ detailed Brett's psychological consultative examination with Paul Sather, Ph.D. which also took place in June 2013. At that examination, Brett reported mental symptoms of depressed mood, sleep difficulties, irritability, concentration problems, and monthly anxiety and panic attacks. The examination revealed Brett to be oriented with intact memory and appropriate thought processes.

The ALJ also considered Dr. Flacco's December 2014 Questionnaire in which she noted the relevant dates for her assessment were from October 1, 2009 to the then-present. The ALJ ultimately did "not find this opinion to be supported by or consistent with the medical evidence of record as a whole, including Dr. Flacco's own progress notes and evidence from other providers." AR 37. The ALJ accordingly did not afford Dr. Flacco's opinion controlling weight.

In considering Brett's credibility and resulting RFC, the ALJ considered Brett's hearing testimony, Dr. Flacco's Questionnaire opinion, the objective medical evidence, Dr. Flacco's records, the State Agency physicians' opinions, and

7

the State Agency psychologists' findings. The ALJ ultimately determined that Brett's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible "for the reasons explained earlier in this decision." AR 44.

## IV

Brett argues the ALJ's RFC was not supported by substantial evidence and the ALJ failed to properly address Brett's subjective testimony.

## A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Brett claims error on the ALJ's part at Step Four.

**B**

Brett's two arguments focus upon the ALJ's consideration of the record evidence in formulating Brett's RFC. A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a). An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record").

**1**

Brett first takes issue with the ALJ's "grossly inaccurate" statement summarizing the results of his 2014 MRI of his lumbar spine. He argues the fact that his 2014 MRI was mostly consistent with the one performed in 2009 illustrates that his back impairment was well-supported for the entire period in question. He further argues the ALJ interpreted MRI results without medical opinion support and played doctor by interpreting the findings. The Commissioner disputes that the ALJ's RFC finding is not supported by substantial evidence where the reviewing State Agency physicians' opinions and objective medical evidence supported the ALJ's Decision, and the ALJ reasonably considered Brett's testimony. The Commissioner also argues that the ALJ's misinterpretation of one MRI scan does not warrant remand in light of that other substantial evidence.

The Commissioner acknowledges that the ALJ "misunderstood" or misinterpreted Brett's 2014 lumbar spine MRI when the ALJ said, point blank – twice -, "There was no indication of nerve root compression or central spinal stenosis. There was only mild disc bulging and mild loss of disc height noted[.]" AR 37. Those MRI results provided, among other things, that Brett had neural foraminal narrowing with encroachment and with effacement and potential impingement at different spots of

10

his lumbar spine. Dr. Flacco summarized that MRI as follows: "Back pain – mri disc desiccation multiple levels and disc bulges and effacement and impingement 2014." AR 608. The Commissioner attempts to downplay the "misinterpretation" by arguing that the 2014 MRI was mostly consistent with the previous 2009 MRI and included findings unchanged from July 2013 to February 2014, the times that the State Agency physicians reviewed the record. However, the misinterpretation is potentially not as innocuous as the Commissioner argues. Notably, the State Agency physicians had neither the 2009 MRI results (Brett explains those results do not appear in the record) nor the 2014 MRI results to consider whereas Brett's treating physician Dr. Flacco noted the 2014 MRI results (which explicitly made comparison to the 2009 MRI) in her own April 2014 and early 2015 progress notes. Such a fact is notable as the ALJ later in his Decision rejected Dr. Flacco's opinion as not consistent with the medical evidence of record as a whole or her own progress notes and accepted the State Agency physicians' opinions as supported by the evidence of record.

The Court cannot ascertain whether the ALJ found consistency/inconsistency between the different medical opinions and the evidence of record based, at least in part, upon his misinterpretation of the 2014 MRI results. Indeed, he cited to other medical and other evidence of record to bolster his findings, but the question remains whether the ALJ viewed that evidence pertaining to Brett's back impairment through an incorrect lens. Thus, an additional question arises whether the ALJ impermissibly played doctor in doing so. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (explaining the ALJ impermissibly played doctor in his evaluation of the claimant's MRI results where he stated her MRI results were "consistent" with her impairments and "then based his assessment of her [RFC] 'after considering . . . the recent MRIs'").

2

Brett next argues the ALJ failed to properly assess his hearing testimony regarding the extent of his symptoms. He specifically argues that none of his activities the ALJ discussed equated to his ability to perform the provided RFC on a regular

11

and continuing basis. Brett also takes issue with the ALJ's determination to discredit him based upon, in part, his supposed inconsistent statements. The Commissioner counters that Brett has not shown the ALJ misunderstood his testimony, and it is unclear why Brett would use a different standard when answering similar questions at the same hearing. As noted earlier, the Commissioner also argues the ALJ reasonably considered Brett's testimony.

Determinations of credibility made by the ALJ will not be overturned unless the findings are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). SSR 96–7p[3] instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication). *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). As with the ALJ's consideration of medical opinions, a credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

In his Decision, the ALJ summarized Brett's testimony as to his "somewhat limited activities" and as to his attorney's and the ALJ's question regarding his lifting capability. After identifying Brett's testified-to daily activities, the ALJ stated, "These activities are consistent with the performance of the restricted range of light work, as

---

[3] SSR 96-7p was rescinded and superseded by SSR 16-3p, published on March 16, 2016. SSR 16-3p applies to determinations and decisions made on or after March 28, 2016.

noted above, and are similar to work functions." AR 41. With regard to Brett's arm lifting capability, the ALJ stated:

> In assessing the claimant's credibility, the undersigned notes that at the hearing he first testified when questioned by his attorney that he could only lift a total of 10 pounds with both arms and could only lift 7 pounds with his left arm. He then testified when questioned by the undersigned, that he could lift 10 to 15 pounds with his right arm alone. Not only is this inconsistent, but, based on his testimony, he can lift at least 22 pounds with both arms together.

AR 41. The ALJ continued:

> Based upon the above inconsistencies, the undersigned finds that the claimant's subjective statements regarding his abilities and limitations are not credible and not supported by the record as a whole. Based on this finding, the subjective statements of the claimant will be given little weight.

AR 41.

Try as it might, the Court cannot read the ALJ's statement regarding Brett's daily activities in any way other than that the ALJ improperly equated Brett's daily activities with the activities of full-time light work. In *Bjornson v. Astrue*, the Seventh Circuit Court of Appeals explained:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [the claimant's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

671 F.3d 640, 647 (7th Cir. 2012); *cf. Penrod on behalf of Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018) ("[T]he ALJ did not improperly equate [the claimant's] daily activities with the activities of full-time work"). The fact that Brett's daily activities were generally consistent with the ability to do sedentary work – an ability that, the

13

Commissioner argues, would make Brett not disabled – does not somehow render the ALJ's explicit consideration of those activities proper.

As for the inconsistency the ALJ found in Brett's testimony regarding his arm strength, such inconsistency is, at best, a mere scintilla of evidence and, at worst, manufactured evidence in support of his credibility finding. The relevant questions and answers are set forth in their entirety above. Brett was asked by his attorney questions that were different than those the ALJ asked him. Thus, his answers were different. The ALJ did provide specific reasons for his credibility finding as he was required to do, but the first reason was legally improper and the second was not one a reasonable mind could accept as alone adequate to support his credibility finding. Indeed, the ALJ, in enabling the Court to trace the path of his reasoning in this regard, clearly revealed where he committed error. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (requiring an ALJ to build an accurate and logical bridge from the evidence to his conclusion so that the reviewing court may "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review").

The Commissioner urges the Court to read the ALJ's Decision as a whole and the Commissioner is certainly correct that the Court must do so. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . ."). However, the ALJ's discrete errors in this case, as discussed above, taint other aspects of the Decision such that, as a whole, the Court cannot say the legal errors committed in this case were harmless or that the Decision remains supported by substantial evidence where some of that evidence was improperly and/or incorrectly considered. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). This case must therefore be remanded for the ALJ to apply the proper legal standards and to accurately recite the evidence of record upon which he relies.

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 16) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to apply the proper legal standards and to accurately recite the evidence of record upon which he relies.

The Clerk of Court is directed to enter judgment as follows: Judgment is entered in favor of the Plaintiff, Brett B., and against the Defendant, Commissioner of Social Security. This case is reversed and remanded for further proceedings pursuant to 42 U.S.C. § 405(g), Sentence Four.

*It is so ordered.*

Entered on September 25, 2018.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE